UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| SALCO MARITIME & LOGISTICS SAL | * | CIVIL ACTION |
| | * | |
| VERSUS | * | NO. 12-1255 |
| | * | |
| OCEAN ATLAS M/V, ET AL. | * | SECTION "L" (5) |

<u>**ORDER & REASONS**</u>

Before the Court are two summary judgment motions filed on behalf of Defendants: (1) Motion for Partial Summary Judgment (Rec. Doc.16); and (2) Motion for Summary Judgment (Rec. Doc.17).  The Court has reviewed the briefs and the applicable law and, having heard oral argument on the Motion for Partial Summary Judgment, now issues this Order & Reasons.

**I.     BACKGROUND**

This case arises out of alleged cargo damage due to improper loading.  According to the Complaint filed by Plaintiff Salco Maritime & Logistics SAL ("Salco"), on or about April 25, 2011, Salco made arrangements with *in personam* Defendants US Ocean, LLC ("US Ocean"), Heavy Patriot LLC ("Heavylift"), Pacific-Gulf Marine, Inc. ("Pacific-Gulf"), and Intermarine, LLC ("Intermarine") (collectively "Defendants") to ship a new General Electric Gas Turbine from Charleston, South Carolina, to Umm Qasr, Iraq, aboard the M/V OCEAN ATLAST.  According to Plaintiff, on or about April 27, 2011, Intermarine drafted a lifting plan to load the cargo.  The cargo, which weighed over 200 metric tons, was delivered to Defendants for loading

1

and carriage on or about May 15, 2011.  While the cargo was being lifted onto the vessel, Plaintiff claims that it rotated and struck part of the lifting arrangement and sustained  damage.

On May 15, 2012, Plaintiff filed suit against M/V OCEAN ATLAS, *in rem*, and against US Ocean, Heavylift, Pacific-Gulf, and Intermarine, *in personam*.  Plaintiff alleges that the damage was a result of Defendants' negligence and seeks damages in the amount of $701,459.25 plus fees and expenses.  The *in rem* cause of action against M/V OCEAN ATLAS was not perfected, because of improper service.  Defendants Heavylift, Intermarine, Pacific-Gulf and US Ocean filed an answer, denying liability and raising a number of affirmative defenses.

## II.     PRESENT MOTIONS

### A.      Defendants' Motion for Partial Summary Judgment (Rec. Doc. 16)

The Defendants filed a Motion for Partial Summary Judgment, arguing that Plaintiff's recovery should be limited to a total of $500.  Defendants argue that the U.S. Carriage of Goods by Sea Act, 46 U.S.C. § 30701, ("COGSA"), applies and, therefore, the COGSA $500 limitation applies as well.  Defendants further argue that the COGSA $500 limitation applies to the entire cargo in this case and, therefore, Defendants' liability is limited to $500 total.

### B.      Defendants' Motion for Summary Judgment (Rec. Doc. 17)

The Defendants also filed a Motion for Summary Judgment, arguing that Plaintiff's claims should be dismissed because Plaintiff lacks standing.  Defendants contend that Plaintiff did not sustain any loss as a result of the damage and, therefore, is not the real party in interest.

### C.      Plaintiff's Response in Opposition (Rec. Docs. 20, 21)

Plaintiff opposes both motions.  Plaintiff first argues that the COGSA limitation does not apply because Plaintiff was not given a "fair opportunity" to avoid the limitation.  Second, Plaintiff argues that even if the COGSA limitation does apply, recovery should be limited to

$500 multiplied by the total revenue tons (235.88).  Plaintiff claims that this figure represents the

number of customary freight units.  Accordingly, Plaintiff claims that $117,940 is the

appropriate level of recovery if the Court chooses to apply the COGSA limitation.  Third,

Plaintiff argues that Defendants Intermarine, Heavylift, and Pacific-Gulf can not benefit from the

COGSA limitation because they are not COGSA carriers and are not covered by the Himalaya

Clause, which expands COGSA coverage to servants and agents of US Ocean.

Plaintiff opposes Defendants' Motion to Dismiss.  (Rec. Doc. 20).  Plaintiff argues that it

does have standing to bring this action because Plaintiff is identified as the "merchant" in the

booking note and is the party to whom insurance proceeds were paid.  Further, Plaintiff

submitted a Declaration from the Ministry of Electricity ("MOE") of Iraq, which ratifies this

action and states that it will not pursue any other legal proceedings to recover these damages.

(Rec. Doc. 55-3).

## III.    Defendants' Motion for Partial Summary Judgment (Rec. Doc. 16)

### A.    Standard of Review

A district court may grant a motion for summary judgment only when "the movant shows

that there is no genuine dispute as to any material fact and the movant is entitled to a judgment

as a matter of law."  Fed. R. Civ. P. 56(a).  When considering a motion for summary judgment,

the district court "will review the facts drawing all inferences most favorable to the party

opposing the motion."  *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir.

1986).  The court must find "[a] factual dispute [to be] 'genuine' if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party [and a] fact [to be] 'material' if it

might affect the outcome of the suit under the governing substantive law."  *Beck v. Somerset*

3

*Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995). The mere argued existence of a factual dispute will not defeat an otherwise properly supported motion. *See Anderson*, 477 U.S. at 248.

**B.     The COGSA "Fair Opportunity" Requirement**

COGSA "applies to a carrier engaged in the carriage of goods to or from any port in the United States." 46 U.S.C. § 30702. Generally, COGSA only applies to carriages covered by a bill of lading. However, courts have still applied COGSA in situations where the cargo is damaged before issuance of a bill of lading, if they find that the bill of lading would have been issued but for the damage. *See, e.g., Baker Oil Tools v. Delta Steamship Lines, Inc.*, 562 F.2d 938, 940 n.3 (5th Cir. 1977); *Luckenbach S.S. Co., Inc. v. American Mills Co.*, 24 F.2d 704, 705 (5th Cir. 1928); . In the present case it s clear that the bill of lading would have issued but for the damage.

Under COGSA, a carrier's liability is limited to $500 per package or per customary freight unit if the goods are not shipped in packages. *See Craddock Intern. Inc. v. W.K.P. Wilson & Son, Inc.*, 116 F.3d 1095, 1107 (5th Cir. 1997). In order for a carrier to benefit from the COGSA limitation, the carrier must provide the shipper with a fair opportunity to avoid the limitation "by declaring the package's actual value and paying additional ad valorem freight." *Indust. Maritime Carriers, Inc. v. Siemens Westinghouse Power Corp.*, No. 02-30856, 2003 WL 21196176, at *1 (5th Cir. May 14, 2003) (citing *Brown & Root, Inc. v. M/V Peisander*, 648 F.2d

4

415, 420 (5th Cir. June 1981)).  As this Court has explained, "the economic choice of whether to accept COGSA limitation lies with the shipper.  The carrier need only provide the shipper with adequate notice of the $500 limitation and a fair opportunity to declare excess value for the cargo." *Perusahaan Pertambangan Minyak Dan v. Chainat Navee M/V*, 136 F. Supp. 2d 586, 588 (La. E.D. 2001) (citing *Ins. Co. of N. Am. v. M/V Ocean Lynx*, 901 F.2d 934, 939 (11th Cir. 1990)).

"The carrier bears an initial burden of showing it offered the shipper a fair opportunity to avoid the limitation." *Tradearbed Inc. v. Western Bulk Carriers K/S*, 374 Fed. App'x 464, 473 (5th Cir. 2010) (citing *Couthino, Caro and Co., Inc. v. M/V SAVA*, 849 F.2d 166, 169 (5th Cir. 1988)).  If the carrier satisfies the initial burden, "the burden of proof shifts to the shipper to demonstrate that a fair opportunity did not in fact exist." *Couthino, Caro and Co.*, 849 F.2d at 171 (quoting *General Electric Co. v. M/V Nedlloyd*, 817 F.2d 1022,1029 (2nd Cir. 1987)).  After the carrier makes a prima facie showing that such an opportunity existed, the burden shifts to the shipper to prove that such an opportunity did not exist. *See Brown & Root, Inc.*, 648 F.2d at 424.

In the present case, Defendants have satisfied their initial burden of proving that a fair opportunity existed for Plaintiff to declare the value of the cargo and escape the COGSA liablity limitation.  First, there was space on the face of the Booking Note, at Box 13, where the merchant could list a "declared value" and be subject to "EXTRA FREIGHT."  (Rec. Doc. 16-3 at 1).  Box 13 read, "Merchant's declared value subject EXTRA FREIGHT as per tariff and additional Clause B."  (Rec. Doc. 16-3 at 1).  This gave the shipper explicit directions about where it could go to find more information regarding the additional freight.  Second, Clause B of the Bill of Lading Terms and Conditions provided:

5

> If U.S. COGSA applies, and unless the nature and value of the cargo has been declared by the shipper before the cargo has been handed over to the Carrier, the value of said cargo has been inserted on Page 1 in the box provided, and the extra charge for Ad Valorem is paid by Merchant, the Carrier shall in no event  be or become liable for any loss or damage to the cargo in an amount exceeding USD 500 per package or customary freight unit.

(Rec. Doc. 16-4 at 1).  This clause notified the shipper that it had the opportunity to declare a higher value, pay a higher freight rate, and escape the COGSA limitation of liability.

The Court agrees with the Plaintiff that US Ocean's tariff, which provided information to the shipper about the ad valorem rate, was exceedingly difficult to access.  However, this does not change the Court's view that Plaintiff was offered a fair opportunity to declare a value for the cargo and avoid the COGSA limitation.  Plaintiff offers no evidence that it inquired about the ad valorem rate or expressed any concern about the limited liability.  There is no indication that Plaintiff even contemplated declaring the value of the cargo and paying a higher shipping rate. The Court finds that there is no issue of material fact.  Plaintiff was given a fair opportunity to declare a higher value for the cargo and escape the COGSA $500 limitation.  Plaintiff rejected this opportunity and entered "None Declared" in the appropriate box.  (Rec. Doc. 16-3 at 1).

At oral argument, the Plaintiff also argued that the ad valorem rate of 5% was so cost prohibitive as to destroy the fair opportunity provided to the Plaintiff.  The Court disagrees.  As the Fifth Circuit has explained, "the reasonableness of an ad valorem charge depends only upon its relationship to the cargo's value, and thus the risk assumed by the carrier." *Indust. Maritime Carriers, Inc.*, 2003 WL 21196176 , at *2.  In that case, the Fifth Circuit refused to find that the carrier's ad valorem rate of 6% was excessive and thus failed to provide a fair opportunity to eliminate the COGSA limitation.  Similarly, this Court does not find that 5% of the declared valuation is unreasonable.  This figure bears a close relationship to the value of the cargo and,

therefore, the additional risk that the carrier would experience if it were subject to full liability. Because the Court finds that Plaintiff had a fair opportunity to declare a higher value for the cargo but declined to do so, the COGSA $500 liability limitation applies to the cargo at issue in this case.          **C. Application of the COGSA $500 Limitation**

*1. The COGSA"Per Package" Limitation*

Given that the COGSA limitation applies, the Court must decide whether the limitation applies to the entire cargo or some subpart of the cargo.  COGSA provides that the "carrier's liability is limited to $500 per package or, if the goods are not shipped in packages, per customary freight unit."  *Craddock,* 116 F.3d at 1107 (citing 46 App. U.S.C. § 1304(5)). Defendants contend that the gas turbine was a single package, as indicated by the booking note which contained the number "1" under "QTY."  However, the number on the booking note is not conclusive.  *See Tamini v. Salen Dry Cargo AB*, 866 F.2d 741, 743 (5th Cir. 1989) (explaining that "the certificate of origin, which denoted '1' in the column labeled 'NO. OF PKGS.,' is, of course, not determinative").

"While the courts attempting to fashion a definition for package have grappled with the definition of 'package', they have consistently used common-sense in construing the term." *G.E. Power Systems, Inc. v. Industrial Maritime Carriers (Bahamas), Inc.*, 89 F.Supp.2d 782, 783 (E.D. La. 2000).  To guide this "common-sense" determination, courts examine certain relevant characteristics of the cargo, for instance: whether the cargo was crated, whether it was attached to skids, whether any appurtenances facilitated handling of the cargo, whether it was exposed to view, and whether it was free standing.  *See Tamini*, 866 F.2d at 743; *see also Aluminios Pozuelo Limited v. S. S. Navigator*, 407 F.2d 152, 155 (2nd Cir. 1968) (defining "package" as "a class of

7

cargo, irrespective of size, shape or weight, to which some packaging preparation for transportation has been made which facilitates handling, but which does not necessarily conceal or completely enclose the goods").  In *G.E. Power Systems Inc.*, the court asked these questions and found that a gas turbine module, almost identical to the one involved in the present case, was not a package for the purposes of COGSA.  89 F. Supp. 2d at 784.  The court explained that "the very large, very bulky turbine, which was not contained in a package, box or crate, was covered only partially by two tarpaulins, which in no way concealed the turbine, and was not attached to a skid or pallet..." was not a package.  *Id.*

This Court agrees with the analysis in that case.  The gas turbine involved in the present case was large, bulky, and free standing.  It was not contained in a box or a crate and was not attached to any loading apparatuses.  While it was covered by a tarpauline, the Court does not find that the tarpauline facilitated handling in any way.  The tarpauline was to protect the turbine from weather and wash.  Nor did the tarpauline conceal the identity of the cargo from the outside world.  For these reasons, the Court finds that the gas turbine was not a package for the purposes of the COGSA limitation.

### 2. The COGSA "Per Customary Freight Unit" Limitation

If the turbine is not a package, Defendants contend that it is a customary freight unit and still warrants application of the $500 COGSA limitation.  The Fifth Circuit has explained that "customary freight unit" in this context "refers to the unit of quantity, weight or measurement of the cargo customarily used as the basis for the calculation of the freight rate to be charged." *Croft & Scully Co. v. M/V Skulptor Vuchetich*, 664 F.2d 1277, 1281 (5th Cir. 1982) (quoting *Lorentzen v. Brazil Oiticica*, 145 F.2d 470, 693 (4th Cir. 1944)).  "As thus construed, the statue gives the court the task of determining what unit was actually used by the carrier for computing

8

the freight charge on the shipment in question."  *Id.* (quoting *Caterpillar Americas Co. v. S/S Sea Roads*, 231 F. Supp. 647, 649-50 (S.D. Fla. 1964), *aff'd*, 364 F.2d 829 (5th Cir. 1966)). "'[C]ustomary freight unit' is a question of fact that will vary from contract to contract.  Of particular importance in this as in any contractual dispute, then, is the parties' intent, as expressed in the Bill of Lading, applicable tariff, and perhaps elsewhere."  *Id.*

The Court finds that this is a factual inquiry and that genuine issues of material fact exist as to what unit the parties used to calculate the freight rate to be charged.  The Plaintiff has put forth evidence that the freight was calculated based on the measurements of the cargo.  (Rec. Doc. 21-2).  Further, Plaintiff points to the booking note, which includes information about the cargo's measurements and revenue tons.  Plaintiff claims that the 235.88 figure, listed under revenue tons, represents the unit upon which the freight charge was based.  The Defendant, on the other hand, argues that the entire turbine was a customary freight unit, as indicated by the number "1" under "QTY" on the booking note.  (Rec. Doc. 16-3).  The parties need an opportunity to present evidence regarding what unit was actually used to compute the freight charge in this case.  The Court finds that this issue is not appropriate for summary judgment.

### 3. The COGSA Limitation and "Lump-sum" Freights

Lastly, Defendants argue that even if this Court finds that the *gas turbine* was not a customary freight unit, the $500 limitation should still be applied because the *entire cargo*–the gas turbine as well as two uncrated basis and turbine parts that were shipped with it–was a customary freight unit.  In support of this claim, Defendants explain that when a freight charge is calculated as a "lump-sum" the entire shipment is a customary freight unit.  *See Craddock*, 116 F.3d at 1109.

9

The Court agrees that if the freight charge was calculated as a lump-sum, the COGSA limitation should apply to the entire cargo.  However, the courts in the cases cited by Defendants still recognized the need to determine what the freight charge was actually based upon.  *See id.* at 1109.  In *Craddock International Inc. v. W.K.P. Wilson & Son, Inc.*, the Fifth Circuit examined the bills of lading and the initial agreement letter to determine whether there was evidence that the freight charge was actually based on a percentage of the cargo's value.  Finding no evidence that the freight was based on the value of the cargo, the Fifth Circuit affirmed the district court's finding that the meal processing plant was shipped on a lump-sum basis.  *Id.*; *see also Croft & Scully Co.*, 664 F.2d at 1282 ("Although Croft & Scully admitted that the freight charge was $2200, calculated on a 'flat contained rate', we do not know how the parties arrived at that rate.  Does it depend upon the contents, weight, value, custom of the trade, applicable tariffis, if any, or other factors?  The District Court must consider these questions on remand.").

The Court finds that this inquiry involves material questions of fact.  The Court must decide how the parties arrived at the freight charge.  Defendants present evidence, in the form of e-mail negotiations, indicating that the freight charge was negotiated on a lump-sum basis.  (Rec. Doc. 34-1).  Plaintiff contends that the freight was calculated using the measurements of the cargo.  It is possible that the parties did intend to negotiate a lump-sum freight charge, as the e-mails indicate.  However, this is a question of fact that remains unanswered in this case.

D.      **US Ocean's Himalaya Clause**

Plaintiff additionally argues that Defendants Intermarine, Heavylift, and Pacific-Gulf cannot benefit from the COGSA limitation.  Plaintiff claims that these Defendants are not "carriers" under COGSA and, therefore, can only benefit from the COGSA limitation through

the application of a Himalaya Clause.  The Himalaya Clause in US Ocean's bill of lading

provides the following:

> [N]o servant or agent of the Carrier (which for the purposes of this
> Clause includes every independent contractor from time to
> time employed by the Carrier) shall in any circumstances whatsoever be
> under any liability whatsoever to the Merchant under this Contract
> of carriage for any loss, damage or delay of whatsoever kind
> arising or resulting directly or indirectly from any act, neglect or
> default on his part while acting in the course of or in connection
> with his employment.

(Rec. Doc. 16-4 at 1).  As the Fifth Circuit has recently explained, bills of lading are contracts

and should be construed according to ordinary rules of contract interpretation.  *See Rafinasi v.*

*Coastal Cargo Co., Inc.*, No. 12-30668, 2013 WL 3815957 at 3 (5th Cir. July 24, 2013).  If the

bill of lading specifically lists parties who will be covered by the COGSA liability limitation,

that list should govern.  Accordingly, all of US Ocean's servants, agents, and independent

contractors are protected by the COGSA limitation.

The Court finds that Defendant Intermarine is clearly covered by US Ocean's Himalaya

Clause.  Intermarine signed the booking note on behalf of US Ocean and Intermarine is listed on

the booking note under "agents."  The Court finds no other reason that Intermarine would enter

into the booking note with Plaintiff other than as the agent of US Ocean.  On the other hand, the

question of whether Heavylift and Pacific-Gulf are covered by the Himalaya Clause is a question

of fact that will require examination of the contracts and negotiations between those Defendants

and US Ocean.  It is unclear from the current record what role these two Defendants played and

what relationship they had to US Ocean.  Therefore, as to Heavylift and Pacific-Gulf, the Court

finds that this decision is not appropriate for summary judgment.

**IV.    Defendants' Motion for Summary Judgment (Rec. Doc. 17)**

**A.      Standard of Review**

Summary judgment is proper when "there is no genuine issue as to any material fact and...the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 242, 255 (1986).

**B.      Law & Analysis**

Defendants ask the Court to dismiss Plaintiff's claim because Plaintiff is not the real party in interest and has not suffered any loss.  Defendants argue that Plaintiff does not have standing to bring this suit.

According to the Federal Rules of Civil Procedure, "an action must be prosecuted in the name of the real party in interest."  Fed. R. Civ. P. 17.  Rule 17 further provides that "a party with whom or in whose name a contract has been made for another's benefit" can sue in their own name without joining the person for whose benefit the action was brought.

The Court finds that Plaintiff Salco is the real party in interest and has standing to bring this suit.  Plaintiff was acting on behalf of the Iraqi MOE, the true owner of the turbine, when it booked the cargo for shipment.  (Rec. Doc. 55-3).  Furthermore, the MOE has ratified this civil action pursuant to Fed. R. Civ. P. 17(a)(3).  For this reason, Defendant's Motion for Summary Judgment is DENIED.

**IV.      CONCLUSION**

For the foregoing reasons, IT IS ORDERED that the Defendants' Motion for Partial Summary Judgment (Rec. Doc. 16) is DENIED IN PART and GRANTED IN PART.  The Court

12

finds that Plaintiff had a fair opportunity to avoid the COGSA limitation and, therefore, the COGSA limitation applies.  However, the Court finds that there are genuine issues of material fact, regarding the calculation of the freight charge, that must be answered before this Court can determine whether the COGSA limitation applies to the entire cargo or some sub-part of the cargo.  With respect to Defendant Intermarine, the Court finds that it is covered by the Himalaya Clause and is entitled to protection under COGSA.  On the other hand, the Court finds that there are material issues of fact regarding the Himalaya Clause and whether COGSA also extends to Defendants Heavylift and Pacific-Gulf.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment (Rec. Doc. 17) is DENIED.


New Orleans, Louisiana, this 10th day of October, 2013.

UNITED STATES DISTRICT JUDGE